UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MONITRONICS INTERNATIONAL, INC. : : : Plaintiff, : : v. : : HALL, BOOTH, SMITH, P.C. and : JAMES H. FISHER, II, : : Defendants. : | CIVIL ACTION FILE NO. 1:15-cv-03927-WSD |

## DEFENDANTS' MEMORANDUM OF LAW REGARDING PRIVILEGE ISSUES RAISED IN DISCOVERY

COMES NOW HALL, BOOTH, SMITH, P.C. AND JAMES H. FISHER, II, Defendants, and pursuant to the Court's instruction at the August 15, 2016 Teleconference, hereby submit their Memorandum of Law Regarding Privilege Issues Raised in Discovery, showing this Court as follows:

### BRIEF FACTUAL BACKGROUND

Monitronics filed the instant lawsuit alleging Defendants' legal malpractice proximately caused a $9 million verdict rendered against it in 2011. Doc. 49 ¶ 47. Defendants were replaced as counsel for Monitronics three months prior to the trial. (Deposition of Jim Fisher, p. 278; 11/11/2011 Jury Verdict, attached hereto as Exhibit A). In the instant action, Defendants served document requests on

1

Monitronics, Carlock Copeland Stair LLP (Monitronics' trial counsel), Holland & Knight, LLP (Monitronics' appellate counsel), Culp & Dyer, LLP (Monitronics' corporate counsel), First Mercury Insurance Company (Monitronics' primary insurer) and Scottsdale Insurance Company (Monitronics' excess insurer). True and correct copies of the requests served by Defendants are attached hereto as Exhibits B through G, respectively. Monitronics and the non-parties objected to the production of responsive documents on the basis of the attorney client privilege and the work product doctrine.

## ARGUMENT AND CITATION TO AUTHORITY

### I. Monitronics has waived the attorney client privilege.

The evaluation of a claim of attorney client privilege in a legal malpractice action involving successor counsel requires the consideration of additional factors beyond the traditional inquiry made when the attorney client privilege is asserted. The Eleventh Circuit, as well as the Second, Fifth, Seventh and Ninth circuits, and several state courts, have adopted the "Hearn test" derived from Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975), to evaluate whether there is a waiver of the attorney client privilege. *The Assertion of Attorney-Client Privilege by Counsel in Legal Malpractice Cases: Policy, Privilege, and the Search for the Truth in Cases Involving Implied Waivers*, Laurence A. Steckman & Richard Granofsky, 45 Tort

Trial & Ins. Prac. L.J. 839, fn 28 (2010) (attached hereto as Exhibit H); *Rules, Standards, and the Attorney-Client Privilege: When the Privilege is "At-Issue" in the Discovery Rule Context*, Kenneth Duvall, 32 N. Ill. U. L. Rev. 1 (2011) (attached hereto as Exhibit I); Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386 (11th Cir. 1994).

While the Hearn case did not arise in the context of a legal malpractice action, it has been used to evaluate claims of privilege in this context in Georgia and other jurisdictions. See e.g. Christenbury v. Locke Lord Bissell & Liddell, LLP, 285 F.R.D. 675 (2012). The test requires consideration of whether: "(1) [the] assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975).

    **a. Georgia cases support a finding of waiver of the attorney client privilege in this case.**

In Cox v. Administrator U.S. Steel & Carnegie, citing to Hearn, the Eleventh Circuit noted "the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information

3

would be manifestly unfair to the opposing party." 17 F3d 1386, 1419 (11th Cir. 1994) (citations omitted).[1] The Eleventh Circuit also acknowledged "the attorney client privilege was intended as a shield, not a sword." Id. at 1418.

The Cox case did not involve the factual scenario at issue here and there is a limited number of factually analogous cases in Georgia. The main case addressing this unique factual scenario in Georgia is Christenbury v. Lock Lord Bissell & Liddell, LLP, 285 F.R.D. 675 (N.D. Ga. 2012) (Anand, M. Judge). In that case, the plaintiff hired a Texas attorney, Lustig, to discuss the purchase of a tax-favorable insurance product from Fidelity. Id. at 678. Lustig recommended a product and obtained a tax opinion letter from the defendant law firm. Id. After purchase of the financial product the defendant law firm withdrew the letter. Id. The plaintiff, after being notified of the withdrawal, retained a new attorney and attempted to back out of the transaction. Id. Fidelity offered to return the money minus the contractually established termination fee. Id.

---

[1] The Cox case identifies three scenarios where a waiver may arise: "(1) when a client testifies concerning portions of the attorney client communication; (2) when a client places the attorney client relationship directly at issue, and (3) when a client asserts reliance on an attorney's advice as an element of a claim or defense." Monitronics has not yet been deposed in this case and Defendants do not know whether it will testify concerning attorney client communications or whether it will assert reliance on an attorney's advice in response to questioning. Therefore, Defendants focus on the second scenario in this Brief but do not waive any future arguments to the extent appropriate based on Monitronics' testimony.

The plaintiff sued and settled with Lustig, then sued the defendant law firm alleging malpractice and other claims. Id. at 679. The defendant raised the defense of lack of causation, proportionate responsibility, comparative negligence and failure to mitigate damages. Id. In discovery, the defendant requested all communications with Lustig and other advisors, as well as documents evidencing the decision to reject Fidelity's settlement offer. Id. at 679.

The court acknowledged the issue put forward by this specific factual scenario was one of first impression under Georgia law. Id. at 682. In considering the assertions made, the Court considered cases from other jurisdictions including Pappas v. Holloway, 114 Wash 2d. 198 (1990) and its progeny. Id. at 682-683. The Court followed Pappas, discussed below, applied the three Hearn factors and found the plaintiff had waived the privileges attaching to any communications with Lustig and others bearing on its participation in the underlying transaction. Id. at 684. In reaching this conclusion, the Court noted there was evidence the plaintiffs "were receiving and relying on advice" from other attorneys regarding the same subjects which form the basis of the malpractice claim against the defendants. Id. at 684. This undermined causation and also gave the defendants a reasonable basis to pursue a comparative negligence defense. Id. The Court also found the third element was satisfied because "Defendants' entire theory of causation and

comparative negligence turns on Plaintiffs' communications with the other professionals Plaintiffs were consulting." Id. at 684. Thus, these communications were vital to the defense.[2]

The Christenbury decision was cited favorably in a subsequent legal malpractice action, First Professionals Ins. Co. v. Owen, Gleaton, Egan, Jones & Sweeny, LLP, 1:12-CV-0419, Doc. No. 38 (Story, J.) (Order and Briefing attached hereto as Exhibit J).[3] In First Professionals, the plaintiff in the malpractice action was the insurance company for the defendant insured in the underlying action. In the underlying action, the insured's attorney allegedly had ex parte communications with a doctor in a medical malpractice case which prompted the trial court to strike the insured's answer. As a result, the underlying case settled for twice the policy limit and the plaintiff insurer filed suit against the attorney's law firm. In discovery, the defendant sought the entire file for the claim from the plaintiff insurer which included the plaintiff's coverage attorney who advised the plaintiff during the settlement of the underlying litigation. In the Motion to Compel, the defendant argued the plaintiff put the communications at issue by

---

[2] The Christenbury court also declined to find a waiver of certain privileged communications which arose after the completion of the underlying transaction. 285 F.R.D. at 684-685. For the reasons discussed below, this portion of the decision does not impact the Court's analysis in this case.

[3] Christenbury was also cited in several cases arising out of insurance coverage disputes or insurance bad faith matters.

filing the suit and identifying the attorney as someone with knowledge and that the communications were relevant to the defenses of voluntary payment, estoppel and failure of proximate cause. The plaintiff disagreed, arguing that it was the defendant and not the plaintiff that put the communications at issue, which is not enough to find a waiver of the privilege. The Court found the plaintiff's arguments were foreclosed by Christenbury and held the defendants were entitled to discover information regarding the decision to settle the underlying case, including communications with counsel. 1:12-CV-0419, Doc. No. 38, at p. 2.

### b. Cases from other jurisdictions support a finding of waiver of the attorney client privilege in this case.

The Pappas v. Holloway case, relied on by Christenbury, is factually analogous to this matter and supports Defendants' position. 114 Wash. 2d. 198 (1990). In Pappas, the Holloways were sued in several cases and Pappas represented them in the consolidated action, along with several other attorneys. Id. at 200. One month before trial, Pappas withdrew as the Holloways' attorney and Holloway hired a new attorney to try the case. Id. The trial resulted in an adverse verdict of $2.9 million. Id. Pappas subsequently sued the Holloways for unpaid attorney fees and the Holloways counterclaimed for malpractice. Id. at 200-201. Pappas responded by denying the allegations and bringing a third party complaint against the attorneys who represented the Holloways at trial. Id. Pappas then

7

sought the production of documents related to trial to which the various parties raised privilege objections. Id. at 202.

In considering the waiver of the attorney client privilege, Pappas identified and distinguished the cases of Jakobleff v. Cerrato, Sweeny & Cohn, 97 A.D. 2d. 834 (NY S. Ct. 1983), Miller v. Superior Court, 111 Cal. App. 3d 390 (1980) and Dyson v. Hempe, 140 Wis. 2d 792 (1987), which involved a request for documents/information from attorneys who were not involved in the underlying litigation. The rationale in those cases was not applicable to the Pappas case, where the defendant "was seeking communications which took place during the course of the [underlying] litigation" which "would be relevant to the malpractice issue raised by the Holloways." Id. at 205.

The Pappas court applied the Hearn factors and found they were satisfied by the Holloways bringing a claim against Pappas for malpractice, by Pappas claiming similar allegations of malpractice against the successor attorneys and because blocking the request for communications related to the underlying litigation would effectively deny Pappas an adequate defense. The court rejected the argument that the only relevant evidence is what happened at trial, noting the inquiry into duty, breach, causation and damages

> will involving examining decisions made at various stages of the underlying litigation. This will necessarily involve information

8

>communicated between these attorneys and the Holloways. This is particularly true given that Pappas was not the attorney who actually tried the case, nor did he have any part in its eventual settlement.

Id. at 209.

In a more recent case from the Southern District of Illinois, the district court applied the Hearn factors and rejected a claim of privilege raised with respect to subsequent counsel's files. Lyon Financial Services, Inc. v. Vogler Law Firm, P.C., 2011 WL 3880948 (S.D. Ill. 2011). In Lyon, the defendant attorneys were dismissed as counsel for the plaintiff during discovery because of alleged misconduct. Id. at *1. Subsequent counsel was retained and the case was tried to a $68 million verdict. Id. As part of the malpractice lawsuit against the defendant attorneys filed by the plaintiff, the defendant attorneys filed a third party complaint against trial counsel and then moved for the production of their file materials. Id.

The Court rejected the plaintiff's attempt to withhold the documents on the basis of privilege, noting first that the plaintiff's complaint sought damages for the amount of the verdict rendered after trial and after the defendants had ceased their representation. Id.at *3. This fact was critical in the Court's analysis because "the specific party, if any, that caused Lyon's trial loss remains unresolved." Id. The plaintiff in Lyon argued the defendants' negligence "hamstrung subsequent counsel with no chance to alter the eventual outcome at trial" which is a similar

9

argument to the one made by Monitronics in this case. Compare Id. at *3 with Monitronics' Responses and Objections to Defendant's First Interrogatories, Nos. 12-13, attached hereto as Exhibit K. This argument demonstrated that "the malpractice of which it accuses [the defendants] –or at least the effects thereof – must have continued beyond the duration of Defendants' representation." Id. Thus, the plaintiff could not temporally limit production to materials generated prior to the malpractice. Finally, the documents were vital to the defense, because without them, "Defendants would be effectively precluded from challenging the causation and actual damages prongs for legal malpractice." Id.

Several other cases in different jurisdictions have found a waiver in the context of successor counsel's representation in an underlying lawsuit and or underlying business transaction. See e.g. Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC, 2014 WL 29451 (M.D. La. 2014) (allowing discovery of subsequent counsel's file materials and finding waiver of the attorney client privilege); Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis, 2013 WL 4157486 (S.D. Ohio 2013) (outlining several cases dealing with waiver in the context of legal malpractice and ultimately requiring the production of withheld documents); IMO Industries, Inc. v. Anderson Kill & Olick, P.C., 746 N.Y.S.2d 572 (2002) (analogizing the request for documents from subsequent counsel to a

request for information from a subsequent medical provider in a medical malpractice case and rejecting attempts to shield subsequent counsel's documents from production).

Courts have also found that wavier is not appropriate in certain situations, after consideration of the specific facts and allegations raised by the parties. Sann v. Mastrian, 280 F.R.D. 437 (S.D. Indiana 2011); Fishel and Kahn Ltd. v. van Straaten Gallery, Inc., 189 Ill. 2d 579, 587, 589 (Ill. S. Ct. 2000) (finding no waiver because the legal malpractice had already ceased well before subsequent counsel was retained); H&D Steel Service, Inc. v. Weston, Hurd, Fallon, Paisley & Howley, 1998 WL 413772 (Ohio Ct. App. 1998) (finding no waiver where the requested documents were not vital to the defense of the case).

### c. Application of the Hearn test to the facts of this case demonstrate Monitronics has waived the attorney client privilege with respect to the requested documents.

Monitronics has asserted the attorney client privilege as a result of several of its affirmative acts and has put the protected information at issue in this case. First, Monitronics filed a legal malpractice claim against Defendants wherein they allege Defendants were the sole proximate cause of the verdict. Second, Monitronics affirmatively decided not to name its corporate counsel, trial counsel or appellate counsel as defendants in the lawsuit, notwithstanding their involvement in the

11

litigation, trial and appeal. Third, many of the alleged "breaches" Monitronics chose to describe in its Complaint could have been cured during the three month period between Defendants' termination and the trial of the case. Fourth, Monitronics has affirmatively pled in the Complaint or described in discovery how Defendants' conduct allegedly impacted subsequent counsel's conduct and the trial of the case. (Doc. 49 ¶¶ 24, 28, 30, 44; Exhibit K, Nos. 10-13, 17). All of these affirmative actions unquestionably put at issue protected communications between Monitronics and its attorneys and the first two elements of <u>Hearn</u> are satisfied.

The third element of the <u>Hearn</u> test is also satisfied here, as the documents being withheld on the basis of privilege are unquestionably vital to Defendants' defenses to the elements of breach and causation, as well as Defendants' right to argue apportionment pursuant to the notice filed against successor counsel. (Doc. 88). In the Complaint, Monitronics alleges a laundry list of alleged breaches of the standard of care. Vital to the defense against these allegations is whether counsel other than Defendants undertook those tasks, the result of those tasks and the decision making with respect to the presentation to the jury of the facts learned as a result of those tasks.

By filing the Complaint as pled, Monitronics is demanding Defendants defend not only their actions, but the actions of all attorneys and possibly the

insurers during the three months prior to trial, during trial and after the verdict. Yet, at the same time, Monitronics is concealing from Defendants communications with all attorneys regarding the decisions that were made with respect to the each of those litigation milestones. The rationale from the Pappas court, embraced by the Christenbury court, speaks directly to this issue by stating "the Holloways cannot counterclaim against Pappas for malpractice and at the same time conceal from him communications which have a direct bearing on this issue simply because the attorney client privilege protects them. To do so would in effect enable them to use as a sword the protection with the Legislature awarded them as a shield." 114 Wash. 2d 198, 208 (1990). Similarly here, Monitronics is unquestionably attempting to use the attorney client privilege as sword and not a shield, which is disallowed in this Circuit. The factors identified in Hearn are present in this case, and Monitronics has waived the attorney client privilege.

    The portion of the Christenbury decision which declines to find a waiver with respect to post-transaction conduct does not demand a different result. In deciding that post-transaction communications which occurred after the alleged malpractice were not discoverable, the court relied on Pappas for the distinction between the underlying transaction and the subsequent efforts to unwind the malpractice. 285 F.R.D. 675 (2012). However, as described above, the Pappas

court allowed for the discovery of all correspondence in the underlying litigation without consideration as to when the alleged malpractice occurred. See Pappas, 114 Wash. 2d. 198 at 205. Further, the Lyon court addressed a similar argument and found that a distinction based on the timing of the malpractice was inappropriate in the context of one underlying transaction. 2011 WL 3880948 (S.D. Ill. 2011). Indeed, in Christenbury, the entire underlying transaction (which was subject to waiver) is akin to the entire underlying litigation giving rise to the instant lawsuit and the distinction drawn by the court in Christenbury is not applicable in this context.

**II.    Defendants are entitled to discovery of documents which may qualify as "work product" generated by Monitronics' attorneys and insurers.**

Documents which qualify as work product can be discovered where "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. Pro. 26(b)(3)(A)(ii). See also In re Tyson Foods, Inc., 2009 WL 1370920 (M.D. Ga. 2009) (Land, J). Work product is further divided into fact and opinion work product, and "materials that reflect an attorney's mental impressions, conclusion, opinions, or legal theories, is referred to as opinion work product." Cox, 17 F.3d at 1422.

In this case, the privilege logs do not differentiate between fact and opinion work product, and instead Monitronics and the non-parties assert a generalized "work product" privilege. Nonetheless, Defendants contend that they are entitled to the production of both fact and opinion work product.

With respect to documents deemed by the Court to be fact work product, there is a substantial need for documents which reflect the work product leading up to the trial of the case. The fact work product generated during the three months between Defendants' termination and trial will necessarily provide insight into whether there were efforts made to engage in the tasks Monitronics now faults Defendants for not doing and the results of those efforts. These documents may provide evidence which is directly relevant to breach, causation and comparative fault. A substantial need exists for these documents, as otherwise Defendants are left to guess at the work done during the months leading up to trial and why certain decisions were made with respect to the evidence put on at trial. Similarly, a substantial need exists for post-verdict work product which address settlement negotiations, as these materials go to the heart of the defense of mitigation of damages. Outside of Monitronics and the non-parties from whom the documents have been requested, there is no other source of the requested information as the

communications are necessarily limited to the discrete group of entities involved in this discovery dispute.

Defendants acknowledge that the Eleventh Circuit has stated "opinion work product enjoys nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." <u>Johnson v. Gross</u>, 611 Fed. Appx. 544 (11th Cir. 2015) (citing <u>Cox</u>, supra). This Court has noted that, in a different factual scenario involving a request for work product generated for the same litigation, "a subject matter wavier of the attorney-client privilege or work-product doctrine does not extend to opinion work product." <u>Belmont Holdings Corp. v. SunTrust Banks, Inc.</u>, 2012 WL 6430598 (N.D. Ga. 2012) (Duffey, J).

However, the US Supreme Court has noted that the work product privilege is not without exceptions. <u>Hickman v. Taylor</u>, 329 U.S. 495, 511 (1947) (stating "we do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases"). Indeed, at least one court in the Middle District of Georgia has found that a document which may constitute opinion work product can lose that privilege where the document was communicated to the client. <u>Am. Family Life Assur. Co. v. Intervoice, Inc.</u>, 2010 WL 3000238 (M.D. Ga. 2010) (Lawson, J). In that case, the attorney communicated his opinions to the client in an opinion letter. <u>Id.</u> at *4.

Relying on a case from the Federal Circuit, the district court held that "at the moment the opinions were communicated to the [the client] they because subject to the waiver." Id. Furthermore, in several of the cases cited for waiver of the attorney client privilege, where the court found a waiver of the attorney client privilege, the court also found a waiver of the attorney/opinion work product protection. Pappas v. Holloway, 114 Wash. 2d. 198 (1990); Lyon Financial Services, Inc. v. Vogler Law Firm, P.C., 2011 WL 3880948 (S.D. Ill. 2011); Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC, 2014 WL 29451 (M.D. La. 2014). See also Rutgard v. Haynes, 185 F.R.D. 596 (1999).

With respect to any opinion work product in this case, the privilege protecting this type of work product is not an absolute privilege, and Defendants contend that this is the "rare and extraordinary" case in which disclosure is necessary and appropriate. Defendants are not seeking attorney work product related to the claims of malpractice or the litigation of the instant malpractice action. The litigation for which the work product was generated is over, and this is not a case where one attorney is seeking discovery of the adversarial attorney's work product for use in the same case. Instead, Defendants are seeking the production of opinion work product on several discrete subject areas which were defined through Monitronics' own Complaint, discovery responses and expert

opinions. On some of these issues, Monitronics has gone so far as to generally describe the mental impressions and analysis of trial counsel, yet is refusing to allow discovery of documents on those specific points. <u>See e.g.</u> Exhibit K, Nos. 10-13. Because of the unique posture of this case and the allegations made by Monitronics, discovery of opinion work product of both the attorneys and the insurers should be allowed under the limited exception outlined in <u>Cox.</u>

This 29th day of August 2016.

                                        SWIFT, CURRIE, McGHEE & HIERS, LLP

                                        */s/ Myrece R. Johnson*
                                        C. Bradford Marsh
                                        Georgia State Bar No. 471280
                                        Myrece R. Johnson
                                        Georgia State Bar No. 940301
                                        Ashley D. Alfonso
                                        Georgia State Bar No. 195484
                                        Attorneys for ***Defendants Hall, Booth, Smith,***
                                        ***P.C. and James H. Fisher, II***

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
Telephone: (404) 874-8800
Facsimile:  (404) 888-6199
brad.marsh@swiftcurrie.com
myrece.johnson@swiftcurrie.com
ashley.alfonso@swiftcurrie.com

## **7.1 CERTIFICATE OF COMPLIANCE**

I hereby certify that this document was prepared in Times New Roman font, 14 point, and complies with Local Rules 5.1(C) and 7.1(D), NDGa.

This 29th day of August 2016.

                      SWIFT, CURRIE, McGHEE & HIERS, LLP

                      ***/s/ Myrece R. Johnson***
                      C. Bradford Marsh
                      Georgia State Bar No. 471280
                      Myrece R. Johnson
                      Georgia State Bar No. 940301
                      Ashley D. Alfonso
                      Georgia State Bar No. 195484
                      Attorneys for ***Defendants Hall, Booth, Smith, P.C. and James H. Fisher, II***

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
Telephone: (404) 874-8800
Facsimile:  (404) 888-6199
brad.marsh@swiftcurrie.com
myrece.johnson@swiftcurrie.com
ashley.alfonso@swiftcurrie.com

# CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing *Defendants' Memorandum of Law Regarding Privilege Issues Raised in Discovery* upon all parties to this matter through the court's e-file system as follows:

Rickman P. Brown, Esq.
Evans, Scholz, Williams & Warncke, LLC
3490 Piedmont Road, NE
Suite 1200
Atlanta, Georgia 30305

This 29th day of August 2016.

        SWIFT, CURRIE, McGHEE & HIERS, LLP

        */s/ Myrece R. Johnson*
        C. Bradford Marsh
        Georgia State Bar No. 471280
        Myrece R. Johnson
        Georgia State Bar No. 940301
        Ashley D. Alfonso
        Georgia State Bar No. 195484
        Attorneys for *Defendants Hall, Booth, Smith, P.C. and James H. Fisher, II*

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
Telephone: (404) 874-8800
Facsimile:  (404) 888-6199
brad.marsh@swiftcurrie.com
myrece.johnson@swiftcurrie.com
ashley.alfonso@swiftcurrie.com

3249443v.1