UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MONITRONICS INTERNATIONAL, INC. : : : Plaintiff, : : v. : : HALL, BOOTH, SMITH, P.C. and JAMES H. FISHER II, : : Defendants. : _____ : | CIVIL ACTION FILE NO. 1:15-CV-03927-WSD |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE DEFENDANTS' PROPOSED EXPERT WITNESSES**

Plaintiff seeks to strike from this legal malpractice case all testimony from Defendants' proposed expert witness Peter Law, and to exclude from evidence any reference to this witness or his proposed opinion testimony. Mr. Law's testimony offers opinions on whether negligence by Defendants was the proximate cause of a jury decision rendered five years ago. But expert testimony on causation is improper in cases of this genre. The rule in legal malpractices cases widely accepted by federal and state courts and expressly adapted by Georgia's Supreme Court and Court of Appeals is expert opinions on causation are excluded as an improper invasion of an issue reserved for jury decision.

1

Plaintiff also moves to bar opinions on proximate cause offered by Defendants' expert Michael Goldman. Mr. Goldman has offered other opinions upon standard of care issues; Plaintiff does not seek to strike his non-causation related opinions.

Additionally, causation testimony from Law and Goldman should be stricken for the reason that it fails virtually every standard for expert testimony set by Rule 702 and *Daubert*. On either basis, Law's entire testimony and the portions of Goldman's testimony offering opinions on proximate cause are improper and should be barred.

## I. Statement of Facts

After its customer was assaulted in her home, Plaintiff, a residential alarm monitoring company, was sued for its handling of alarms emanating from the customer's home the day of the assault (that lawsuit hereafter "*Veasley*"). Pl.'s First Am. Compl., Doc. 49 at ¶¶ 8-13. Plaintiff subsequently engaged Defendants in this case to provide legal representation defending the customer's lawsuit. *Id.* Multiple instances of professional negligence are alleged to have been committed by Defendants while acting as Plaintiff's attorneys in *Veasley*. *Id.* at ¶¶ 48-52. Prominent among these is Defendants' failure to timely file notices of intent to seek

jury apportionment of fault to the assailant and other culpable non-parties ("the omitted parties").[1]  *Id.* at ¶¶ 18-23.

As discovery was closing in *Veasley*, several incidents involving Defendants caused them to be fired and new counsel engaged.  *Id.* at ¶ 43.  Because of Defendants' untimely filing of notices of apportionment, the case was tried without the jury being tasked with apportioning fault to the omitted parties.  *Id.* at ¶¶ 19-23.  This materially altered the manner in which Plaintiff presented its case compared to how it would have been tried had apportionment been submitted for jury decision.  *Id.* at ¶ 46.  The trial resulted in a sizeable verdict and judgment against Plaintiff.  *Id.* at ¶ 47.

In the case at bar, Plaintiff seeks recovery of damages resulting from Defendants' professional negligence in the original matter.  *Id.* at 28-29.  Included are damages stemming from the loss of apportionment rights.  *Id.*

In their defense, Defendants deny they were negligent, also asserting that any negligence that may have occurred was not the proximate cause of damage.  *See*

---

[1] Since the enactment of the apportionment statute, O.C.G.A. § 51-12-33, in 2005, "one of the more effective uses for the apportionment statute is to apportion fault to a non-party criminal wrongdoer in a premises liability or negligent security case." David C. Marshall et al., *Apportionment of Fault to a Non-Party – Pointing Fingers to Victory*, Ga. Defense Lawyers Ass'n. L.J. 33, 40 (2011).

Def.'s Am. Answer, Doc. 55 at 2.  To support their causation defense, Defendants engaged attorneys Peter Law and Michael Goldman to testify as expert witnesses. *See* Ex. 1, Expert Report of Law, Doc. 56-2 at 2; Expert Report of Goldman, Doc. 56-1 at 2-3.  Both the attached Rule 26 reports and deposition testimony[2] of Law and Goldman establish that opinions they intend to present at trial include testimony upon the issue of proximate cause. Ex. 1, Doc. 56-2 at 3-4, Doc. 56-1 at 2-3. Specifically, they opine on the issue of whether damage was proximately caused by loss of the ability to reduce the judgment by the amount of fault the jury would have apportioned to the assailant and others. *Id.*  For multiple reasons, this testimony is improper and should be barred.

### II.     **Testimony of Peter Law**

Law's testimony looks back in time to speculate how the *Veasley* jury would have decided apportionment to the omitted parties.  That these opinions are the product of sheer guesswork is enough to warrant their exclusion.  But reflective of multiple legal and factual deficiencies, Law was not provided and has not researched himself extensive jury verdict data strongly suggesting his opinions are exactly the opposite of what juries do. See Ex. 3, Peter Law Deposition ("Law Dep.") at 66:9-

---

[2] Transcripts of the depositions of Law and Goldman have been filed contemporaneously with submission of this motion.

4

66:25.  This data was supplied to Defendants on July 31, 2015.[3]  It detailed all jury verdicts nationwide deciding apportionment of fault to criminal assailants (53.09% average degree of fault apportioned to such assailants; 60.5% median degree of fault to them).

Unaware of or ignoring this larger, more reliable data set, Law opined, based on experience limited to having tried *one* case involving apportionment to criminal assailants[4] that, had it been permitted in the *Veasley* trial, the jury would not have apportioned material degrees of fault to the assailant and others.  *See* Ex. 1, Doc. 56-2 at 1-4.  But Law is not a jury expert by training or profession.  He does not claim to possess any knowledge about *any* of the jurors who decided the *Veasley* case.  Law Dep. at 67:4-67:8.  Law did not read the available 1,400 page trial transcript from the *Veasley* case, admitting he reviewed only the opening and closing arguments and the examination of one witness (250 pages of 1,400 pages, less than 18%).  *Id.* at 88:12-89:8.  He also did not review the 400 pages of exhibits introduced at trial.  *Id.* at 89:8.  He did not take into account all the evidence Plaintiff contends should and would have been introduced at trial if Defendants had properly prepared the case during discovery.  *Id.* at 88:12-89:8.  He did not consider the different

---

[3] *See* Ex. 2, Affidavit of Ginger Lanier and Ex. A attached thereto.
[4] Law Dep. at 72:12-73:4.

presentation that Plaintiff would have made if the jury had been permitted to apportion fault to the omitted parties.  *Id.*

Belying the role of expert as an impartial, neutral observer relying upon facts of record, Law also undertook factual investigation of the issues *on his own*, talking with trial counsel for Ms. Veasley, and meeting in person with both the defendant James Fisher and Denise Spitalnick, a partner of Fisher's against whom allegations of negligence are made.  *Id.* at 53:24-54:2; 33:13-42:12.  Law found information obtained from his personal interviews of these witnesses useful because he personally judged them to be "credible".  *Id.* at 40:4-42:12.

Attempting to demonstrate he is "sufficiently qualified" to opine upon what jurors in the *Veasley* trial would have done if allowed to apportion fault to the omitted parties, Law states he has tried only one case in which apportionment of fault was considered by a jury.  Although in that case, an assault case in Alabama, the jury apportioned $1 million of fault to the assailant, Law dismisses the prospect of fault apportionment in *Veasley,* had it been permitted.  *Id.* at 72:12-73:4.  Beyond that one case, he claims no research into or knowledge of the scores of cases nationwide involving jury apportionment of fault to a criminal assailant.  *Id.* at 66:9-66:25.  He admits to no knowledge of what is required to accomplish research of a level of comprehensiveness that meets *Daubert* standards of scientific credibility

and "sufficient reliability" so as to permit, if even possible, accurate prediction upon how apportionment would have been decided by the *Veasley* jury six years ago. *Id.* at 71:23-72:1. He does not know if professional jury experts, or for that matter, any discipline within the social sciences, believe it remotely possible for an expert to state in 2017 with any degree of accuracy what the *Veasley* jury would have done in the 2011 trial with apportionment to the omitted parties. *Id.* at 70:14-72:1.

Further, Law's testimony results from a mismatch between the factual basis for his opinions and the substantially different evidentiary basis on which this case will be decided. Law's opinion on how apportionment would have been decided is founded only upon the presentation and arguments made in the actual trial, a proceeding in which apportionment was not allowed. *Id.* at 87:15-88:6. He did not consider the materially different evidence and arguments that would have been presented had the case been properly prepared *and* apportionment permitted. *Id.* The different case that Plaintiff would have presented in *Veasley* in the absence of attorney negligence is the evidentiary foundation on which the present case will be resolved. This is the procedure for trial of cases of this nature, a process endorsed by many of the same appellate decisions that prohibit expert causation testimony.[5]

---

[5] *See* Section IV(B), *infra* at 11-16.

In focusing only upon what scant knowledge he derived from review of a fragment of the transcript and none of the record, Law utilized an inapposite basis for his opinion. *Id.* at 88:12-89:8. Demonstrating the significance of this distinction, when asked to state his opinion upon how the *Veasley* jury would have decided apportionment if allowed and with both sides making competent presentations, Law seemingly contradicted his original opinion, admitting that the result in the *Veasley* trial of properly handled apportionment would have been that "[Monitronics] might have saved a little money, perhaps." *Id.* at 126:24. He could not say how much. *Id.* at 131:1-131:3.

### III. <u>Testimony of Michael Goldman</u>

While Defendants ostensibly offer Michael Goldman as an expert on standard of care issues, he submitted multiple opinions on proximate cause, covering virtually every issue in the case. These opinions suffer from the same legal and factual deficiencies as with Peter Law:

- No research into or stated familiarity with the evidence from the available history of the more than 40 jury verdicts nationwide representing the most reliable data set on how juries apportion fault to criminal assailants; Ex. 4, Michael Goldman Deposition ("Goldman Dep.") at 94:22-96:6

- Speculation on how the *Veasley* jurors would have decided apportionment despite having no stated knowledge of any of the jurors; *Id.* at 99:2-99:14

- Did not review the available record of exhibits introduced at the *Veasley* trial nor the trial transcript, reading only the portion of the transcript containing closing arguments (92 pages of 1,400 pages, less than 7%); *Id.* at 76:9-76:12; Ex. 1, Doc. 56-1 at 2

- No stated consideration of the evidence Monitronics would have presented had Defendants properly handled discovery and pre-trial preparations; *See* Ex. 1, Doc. 56-1 at 2-11

- No stated consideration of the different presentation Monitronics would have made at trial had apportionment to the omitted parties been allowed; *Id.*

- No stated experience trying a case in which a jury decided apportionment to a criminal assailant. *Id.* at 1-2.

IV. **Argument and Citation of Authority**

   A. **Federal Rule of Evidence 702 and *Daubert* Standards**

The propriety of Law and Goldman's testimony is governed by familiar standards contained in Federal Rule of Evidence 702 and the Supreme Court's

9

opinion in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-3, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Expert testimony must satisfy three requirements under Rule 702 for admission at trial. The Court must determine whether: "(1) the expert is sufficiently qualified to testify on the issues he intends to address; (2) the expert's methodology is sufficiently reliable...; and (3) the testimony assists the trier of fact." *Guinn v. AstraZeneca Pharms., LP*, 602 F.3d 1245, 1252 (11th Cir. 2010); *see also Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1309 (11th Cir. 1999) (applying *Daubert* and Rule 702).

The court is required to act as gatekeeper to ensure that expert testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-3, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Expert testimony is reliable if the methods used are valid and appropriately applied. *Seamon v. Remington Arms Co.*, 813 F.3d 983, 988 (11th Cir. 2016). Testimony assists the trier of fact if it is relevant to an issue being tried. *Seamon v. Remington Arms Co.*, 813 F.3d 983, 988 (11th Cir. 2016).

Furthermore, "[t]he party offering the expert testimony has the burden of demonstrating that the testimony is 'relevant to the task at hand' and 'logically advances a material aspect' of its case." *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009) (citing *Daubert*, 509 U.S.

10

at 597 and *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999)). If the party offering the expert fails one of the requirements under Rule 702 or fails the "rigorous inquiry" required by *Daubert*, the expert's testimony must be excluded. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005). The court "has broad discretion in determining whether to admit or exclude expert testimony." *Evans v. Mathis Funeral Home, Inc.*, 996 F.2d 266, 268 (11th Cir.1993) (citing *Salem v. U.S. Lines Co.*, 370 U.S. 31, 34, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962)).

### B. Law and Goldman's Testimony is Inadmissible Because it Invades an Issue Exclusively for the Jury

In legal malpractice actions in Georgia alleging negligent professional conduct in a prior litigation, expert opinion testimony is excluded on the issue of what result would have occurred in the prior case had the defendant attorney not been negligent. This testimony is deemed improper because the question to be answered is not what the actual jury in the original case would have decided had malpractice not occurred. Instead, utilizing tort law's benchmark "reasonableness" standard, the Georgia Supreme Court declared five years ago that the malpractice case jury will decide how a "reasonable jury" would have decided the prior case after hearing the different evidence and issues to be presented at the malpractice trial.

Expert opinion on the issue thus is not allowed.  In its decision, *Leibel v Johnson*[6], the Supreme Court held that the Georgia Court of Appeals erred when it approved the plaintiff's use of expert testimony on proximate cause in a legal malpractice trial. Finding it to be a natural and customary task for the malpractice case jury to determine causation, the Court found the malpractice jury should decide how a reasonable jury would have "evaluat[ed] the evidence in the underlying case as it should have been presented."  Allowing expert testimony on proximate cause in legal malpractice litigation is reversible error because:

> . . . . the second jury in the malpractice case is *not* deciding what the first jury would have done in the underlying case had the attorney not been negligent, but only what a *reasonable* jury would have done had the underlying case been tried without the attorney negligence alleged by the plaintiff. The second jury does this by independently evaluating the evidence in the underlying case as it should have been presented to determine whether it believes that the plaintiff has a winning case, not by deciding whether some prior jury may or may not have believed that the plaintiff had a winning case.  See *Cook,* supra.  In this connection, the Court of Appeals was incorrect in its conclusion that the jury in the malpractice case was tasked with deciding an issue that could not be resolved by the average lay person.  Because the jury in the malpractice case was not being asked to decide what a prior jury would have done, it was merely being asked to do exactly what any jury in a discrimination lawsuit would do, which is, evaluate the evidence in the case and decide the case on the merits.  This is a task that is solely for the jury, and that is not properly the subject of expert testimony.  See *Sotomayor v. TAMA I, LLC,* 274 Ga. App. 323, 326, 617 S.E.2d 606 (2005) (''A party may not bolster his case as to the ultimate issue with expert testimony when the jury could reach the same conclusion independently of the opinion of others'').  In any event, ''[b]ecause the second jury [in the malpractice case] is not being asked to decide what the original jury would have done, expert testimony on the behavior of that particular jury or any other jury is irrelevant.''

---

[6] 291 Ga. 180, 728 S.E.2d 554 (2012)

(Citation omitted.) *Cook,* supra, 180 Wis.2d at 251–252, 509 N.W.2d 100. Accordingly, the Court of Appeals erred in concluding that the testimony of Dr. Johnson's expert was admissible here. Judgment reversed.

*Leibel v. Johnson*, 291 Ga. 180, 182-183, 728 S.E.2d 554 (2012)(emphasis in original)

Applied to the case at bar, the holding in *Leibel* mandates exclusion of causation opinions by Law and Goldman. Having the malpractice jury decide causation issues after consideration of evidence not heard by the original jury is the proper way in these cases, commonly accepted as a more reliable procedure than permitting the jury to be told by an expert what result to reach on causation.[7]  Georgia, as well as a vast majority of federal and state courts that have addressed the issue, mandate the trial court to safeguard the role of the jury in a malpractice case as decision-maker upon causation. *Tidwell v. Hinton & Powell*, 322 Ga. App. 486, 486, 744 S.E.21d87, 88 (2013) ("expert testimony is not admissible in a legal malpractice case to show causation because of the case-within-a-case structure of such an action."); *see Henkel v. Wagner*, No. 12-CV-4098 (AJN), 2016 WL 1271062, at *13 n.8 (S.D.N.Y. Mar. 29, 2016) (although a case in which

---

[7] *Montgomery v. Aetna Cas. & Sur. Co.,* 898 F.2d 1537, 1541 (11th Cir.1990) (citing Fed.R.Evid. 704 at Committee Notes) ("An expert may testify as to his opinion on an ultimate issue of fact. An expert may not, however, merely tell the jury what result to reach.")

13

both sides introduced expert testimony on causation without challenging the propriety of the other side's use of same, the Court noted that it would have excluded such testimony had the parties raised objection because expert testimony on causation in legal malpractice actions is not proper, causation being a task for resolution by the jury); *Hickey v. Scott*, 796 F. Supp. 2d 1, 5 (D.D.C. 2011) (expert testimony on the issue of causation in a legal malpractice action "impermissibly encroaches on the jury's role."); *Falic v. Legg Mason Wood Walker, Inc.*, No. 03-80377-CIV, 2005 WL 5955704, at *4 (S.D. Fla. Jan. 10, 2005) (reasoning that the expert attorney's testimony on causation in a legal malpractice claim was unnecessary because the subject is "within the capacity of an ordinary jury and does not require clarification by expert testimony."); *Piscitelli v. Friedenberg*, 87 Cal.App.4th 953, 972–73, 105 Cal.Rptr.2d 88 (Cal.App.Ct.2001) (excluding expert testimony on issue of what should have been the "ultimate result of the underlying arbitration" absent attorney negligence because it was "precisely the jury's role to step into the shoes of the arbitrators, consider the facts of [the plaintiff's] underlying claims and ultimately determine their merits."); *Wo Yee Hing v. Stern*, 99 A.D.3d 58, 63, 949 N.Y.S.2d 50 (1st Dept. 2012) (expert opinion was inadmissible where issue of proximate cause turned on factual question of whether plaintiff took requisite actions to purchase a suitable replacement property in the required time

frame); *Whitley v. Chamouris*, 265 Va. 9, 11, 574 S.E.2d 251 (Va. 2003) (holding expert testimony on causation in a legal malpractice action to be improper, as it would require "either a prediction of what some other fact finder would have concluded," which is speculative, or "an evaluation of the legal merits" of the underlying claim, which is an impermissible legal opinion).

In *Leibel,* the Georgia Supreme Court extensively quoted a Wisconsin legal malpractice decision with similar apportionment of fault issues as this case, *Cook v. Cont'l Cas. Co.*[8]. The *Cook* decision precluded expert testimony on the issue of causation concerning how the jury in the underlying action would have apportioned fault among the parties. The defendant attorney contended on appeal that the trial court erred in rejecting expert causation testimony upon what the jury would have decided in the original case had attorney negligence not occurred. 180 Wis. 2d at 251. On appeal, the Wisconsin Court of Appeals affirmed the exclusion of expert causation testimony, reasoning that "the jury need only be given evidence that is relevant to their task of apportioning negligence between [the parties]." *Id* at 252. "What the previous jury did, or should have done, becomes irrelevant where the

---

[8] 180 Wis. 2d 237, 252 (Ct. App. 1993).

15

present jury is deciding the issue independently…the only question regarding causation is how does *this* jury believe that negligence should be apportioned[.]" *Id.*

The rationale supporting decisions such as *Leibel* and *Cook* could be parsed and imported virtually word for word into a decision excluding the causation testimony of Law and Goldman. Applied to the present facts, the rule makes it the province of the jury in this case, applying the reasonable jury standard, to decide what should have happened in the original *Veasley* case absent attorney negligence. The opinion testimony of Law and Goldman on this issue is improper as a matter of law and should be stricken.

### C. Law and Goldman's Testimony Fails *Daubert* and Rule 702 Standards

The causation opinions of Law and Goldman also infringe proper methodology and reliability standards and should be excluded on that basis as well. In opining how a jury would have decided certain issues six years ago, Law and Goldman undertook a task that was highly implausible from the outset. The scarce examination they gave of the large volume of pertinent data further thwarts their testimony from meeting *Daubert* and Rule 702 standards. Without: (i) any knowledge of the jurors who rendered the verdict in *Veasley,* (ii) reading the entire trial transcript or any of the record of exhibits admitted in *Veasley*, (iii) doing any

research into or being provided by defense counsel with the historical record of all comparable jury verdicts nationwide showing the significant percentage of fault juries apportion to criminal assailants, or (iv) taking into account the different evidence, issues, and argument that the negligence of Defendants prevented Plaintiff from presenting, the testimony cannot demonstrate a "methodology (that) is sufficiently reliable"[9] or "methods used (that) are valid and appropriately applied."[10]

In fact, it is difficult to imagine any scenario in which exists a "reliable", "valid" and "appropriately applied" method to look back through the years and determine how never heard evidence and arguments would have impacted the confidential decision-making of members of the *Veasley* jury.  A recognition that an expert cannot divine such results likely formed the rationale for the *Leibel* Court to reject expert opinion and adopt the "reasonable jury" standard for determining how attorney negligence may have impacted a prior litigation.  *Leibel* and decisions following its reasoning regard this manner of expert opinion as little more than crystal ball speculation, an apt characterization of the look-back-in-time testimony at issue here.  When paired with the sparse, inapposite factual basis for their

---

[9] *Guinn v. AstraZeneca Pharms., LP*, 602 F.3d 1245, 1252 (11th Cir. 2010);
[10] *Seamon v. Remington Arms Co.*, 813 F.3d 983, 988 (11th Cir. 2016).

opinions, Law's entire testimony and Goldman's causation testimony fail both plausibility standards and the rigorous criteria of *Daubert* and Rule 702.

## V.  Conclusion

For all of these reasons, Plaintiff respectfully requests that this Court an issue an order granting the instant motion, thereby excluding from evidence the expert report, opinions, and testimony of Peter Law, and all opinion submissions on causation from Michael Goldman.

Respectfully submitted, this 2nd day of October, 2017.

**EVANS, SCHOLZ, WILLIAMS & WARNCKE, LLC**

By:  s/Rickman P. Brown
Rickman P. Brown
Georgia Bar No. 089276
*Attorney for Plaintiff Monitronics International, Inc.*

3490 Piedmont Road, N.E.
Suite 1200
Atlanta, GA 30305
Tel: (404) 841-9400
Fax: (404) 869-0238
rpbrown@esww-law.com

## **CERTIFICATE OF COMPLIANCE WITH LR 7.1, N.D. Ga**

Pursuant to LR 5.1 and LR 7.1, N.D. Ga., I hereby certify that the foregoing document complies with the font and point selections approved by the Court in LR 5.1B and was prepared using Times New Roman font, 14-point.

**EVANS, SCHOLZ, WILLIAMS & WARNCKE, LLC**

By: /s/Rickman P. Brown
Rickman P. Brown
Georgia Bar No. 089276
3490 Piedmont Road, N.E.
Suite 1200
Atlanta, GA 30305
Tel: (404) 841-9400
Fax: (404) 869-0238
rpbrown@esww-law.com

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Plaintiff's Brief In Support of Motion to Exclude Defendant's Proposed Expert Witness** has been served via the Court's electronic filing system to the following counsel on this 2nd day of October, 2017.

> C. Bradford Marsh
> Myrece R. Johnson
> Ashley D. Alfonso
> Swift, Currie, McGhee & Hiers, LLP
> The Peachtree, Suite 300
> 1355 Peachtree Street, NE
> Atlanta, Georgia 30309-3231
> *Attorneys for Defendants Hall, Booth, Smith,*
> *P.C. and James H. Fisher, II*

**EVANS, SCHOLZ, WILLIAMS & WARNCKE, LLC**

By: s/Rickman P. Brown
Rickman P. Brown
Georgia Bar No. 089276
3490 Piedmont Road, N.E.
Suite 1200
Atlanta, GA 30305
Tel: (404) 841-9400
Fax: (404) 869-0238
rpbrown@esww-law.com